IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

**CABLECOM TAX SERVICES, INC.**
*doing business as*
Property Tax Accounting**,**

    **Plaintiff,**                                           Civil Action No.: 5:12cv069

v.

**SHENANDOAH**                              **By:**   Hon. Michael F. Urbanski
**TELECOMMUNICATIONS**                      United States District Judge
**COMPANY, et al.,**

    **Defendants.**

## MEMORANDUM OPINION

In this action, Cablecom Tax Services, Inc., d/b/a Property Tax Accounting ("Cablecom"), asserts claims of breach of contract (express and implied), unjust enrichment and theft of trade secrets against Shenandoah Telecommunications Company, Shenandoah Personal Communications, LLC, Shentel Communications, LLC, Shentel Cable Television, LLC, Shenandoah Telephone Company, Shenandoah Mobile, LLC and Shentel Converged Services, Inc. (hereinafter collectively referred to as "Shentel"). Shentel has moved to dismiss the complaint and filed a counterclaim. Plaintiff has sought a more definite statement as to the fraud allegations in the counterclaim.

The dispute arises out of an alleged consulting relationship between Cablecom and Shentel and is framed by two separate documents, both dated August 25, 2010 and entitled "Property Tax Service Agreement." Plaintiff in this action, Cablecom Tax Services, Inc., is not a party to or otherwise mentioned in the two agreements. Rather, the agreements are between Shenandoah Telecommunications Company and an entity referred to as "Property Tax

Accounting (PTA)." The agreements recite that Shentel engaged Property Tax Accounting "to prepare current or amended property tax returns and to negotiate values with tax authorities" for the various Shentel entities for the 2011 tax year.[1] Cablecom asserts that it obtained substantial property tax reductions for Shentel, but Shentel has refused to pay Cablecom, thereby breaching the agreements. Cablecom also asserts claims of implied contract, unjust enrichment and theft of trade secrets.

## I.

Shentel has moved to dismiss Cablecom's first amended complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that it fails to state plausible claims for relief. The court agrees, and grants Shentel's motion.

Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To survive a Rule 12(b)(6) motion, the claimant's "[f]actual allegations must be enough to raise a right to relief above the speculative level," and the pleading must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). While the court must accept the claimant's factual allegations as true, this tenet is "inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The complaint must contain sufficient facts from which the court, calling upon "its judicial experience and common sense," can conclude that the pleader has "shown" that he is entitled to relief. Id. at 679; Fed. R. Civ. P. 8(a).

---

[1] Each agreement was executed by a representative of Shenandoah Telecommunications Company and Property Tax Accounting, but appear to concern different Shentel entities. The first agreement names Shenandoah Telecommunications Company, Shenandoah Personal Communications, Shenandoah Telephone Company, Shenandoah Service Company, Shenandoah Cable Television Company, Shenandoah Mobile Company, Shenandoah Network Company, and Shenandoah Cable Company (including Jet Broadband acquisition). The second agreement names only Shentel Converged Services.

2

With these precepts in mind, the court concludes that Cablecom has failed to plead plausible claims to relief for breach of express or implied contract, unjust enrichment, and theft of trade secrets.

**A.**

Cablecom asserts that Shentel breached the Property Tax Service Agreements by failing to pay it 50% of the combined total tax savings realized by Shentel from the tax consulting arrangement, or $175 per hour, whichever was less. Although Property Tax Accounting is the named party in the agreements, there is no allegation in the first amended complaint suggesting that it is a properly constituted legal entity. Rather, plaintiff seeks to enforce these agreements by conclusorily asserting that Cablecom Tax Services, Inc. does business under the assumed or fictitious name of Property Tax Accounting.

Shentel has raised a number of issues regarding Cablecom's ability to maintain this action. First, at the time the lawsuit was filed, July 13, 2010, Cablecom was not authorized to transact business in Virginia. Although Cablecom could not maintain this action without such authority, it subsequently cured this infirmity on September 10, 2012. See Va. Code Ann. § 13.1-758; Video Eng'g Co. v. Foto-Video Elecs., Inc., 207 Va. 1027, 154 S.E.2d 7 (1967); see also Quarles v. Miller, 86 F.3d 55 (4th Cir. 1996).

Second, both at the time the agreements were executed and the time the suit was filed, Cablecom had no assumed or fictitious names registered with either the Virginia State Corporation Commission or the Texas Secretary of State. After this issue was raised by Shentel in its Motion to Dismiss, Cablecom filed assumed or fictitious name certificates in Texas on August 27, 2012, and in Virginia in October, 2012. Under both Texas and Virginia law, Cablecom's mere failure to register Property Tax Accounting as an assumed or fictitious name at

the time suit was filed or the agreements executed is not fatal to its claim. See Va. Code Ann. § 59.1-76; Phlegar v. Virginia Foods, Inc., 188 Va. 747, 51 S.E.2d 227 (1949); Tex. Bus. & Com. Code Ann. § 71.201(a) (West 2013); Russ v. Duff, 49 S.W.2d 905 (Tex. Civ. App. 1932); Fogal v. Stature Const., Inc., 294 S.W.3d 708 (Tex. App. 2009).

Third, at the time the agreements were executed, August 25, 2010, Cablecom's corporate charter had been forfeited by the Texas Secretary of State for failure to pay state franchise tax. Cablecom's Texas charter, forfeited on July 30, 2010, was reinstated on September 3, 2010. Because the agreements at issue in this case were executed during the period of forfeiture, Shentel argues that they are unenforceable.

Texas law does not support Shentel's argument. To be sure, at the time the agreements were executed, Cablecom was a "terminated entity" under Texas law. Tex. Bus. Orgs. Code Ann. § 11.001 (4)(B) (West 2013). As a terminated entity, Cablecom was required to wind up its affairs. Id. at § 11.051. During the wind up period, Texas law places limits on corporate powers. Id. at § 11.052. The obligation to wind up, and the concomitant limitation of corporate power, cease, however, if the event requiring winding up is cancelled. Id. at § 11.152. Here, the event requiring wind up, Cablecom's failure to pay the Texas franchise tax, was remedied on September 3, 2010 when Cablecom filed its Application for Reinstatement and Request to Set Aside Tax Forfeiture. Under Texas law, when such reinstatement occurs, "(1) the existence of the terminated entity is considered to have continued without interruption from the date of termination; and (2) the terminated entity may carry on its business as if the termination of its existence had not occurred." Id. at § 11.206. Shentel argues that Texas Business Organizations Code §§ 11.356(a) and (b) prohibit Cablecom from entering into an enforceable contract while it is a terminated entity. However, § 11.356(b), consistent with § 11.206, suggests just the

4

opposite. It provides that '[a] terminated filing entity may not continue its existence for the purpose of continuing the business or affairs for which the terminated entity was formed *unless the terminated filing entity is reinstated under Subchapter E.*" Tex. Bus. & Com. Code Ann. § 11.356(b) (emphasis added). That is precisely what happened here. In short, Shentel's argument that the agreements at issue in this case are invalidated by the temporary lapse of its Texas corporate charter is inconsistent with Texas law.

In seeking a contrary result, Shentel makes two arguments. First, Shentel argues that it is of no consequence that Cablecom's corporate charter was reinstated under Texas law. For that proposition, Shentel cites the recent Texas Court of Appeals decision in Endsley Elec., Inc. v. Altech, Inc., 378 S.W.3d 15 (Tex. App. 2012), but this case does not support its argument that Cablecom's agreements with Shentel are void ab initio. In that case, a general contractor, Altech, Inc., contracted with Endsley Electric to perform electrical subcontract work during the construction of a school building. A dispute arose, Altech contending that Endsley Electric failed to perform certain work. After execution of the subcontract and completion of the school building project, Endsley Electric's Texas charter was forfeited for failure to pay franchise taxes. As a consequence of the forfeiture of the charter, Altech sought to hold Endsley Electric's corporate officers personally liable for the breach. Although an Endsley Electric corporate officer testified that the corporate charter had been reinstated, no written proof was produced at trial that the charter was reinstated or the company was in good standing. Id. at 19-20. The Endsley Electric decision is inapposite for two reasons. First, the subcontract in that case was entered into while Endsley Electric's charter was in force. While the Texas Court of Appeals noted that Endsley Electric's charter had been forfeited and the corporate entity terminated for failure to pay franchise taxes, the decision does not concern the circumstance presented here of a

5

contract entered into by a Texas corporation during a temporary period of charter forfeiture. Second, although Endsley Electric's charter was later forfeited, there was insufficient evidence adduced at trial that its charter had been reinstated. In short, Endsley Electric does not suggest a result inconsistent with the plain meaning of the Texas statute, i.e., that once reinstated, Cablecom's existence is considered under Texas law to have continued without interruption.

Second, Shentel argues that the only basis upon which Cablecom could sue for breach of contract is under an agency theory as an undisclosed principal, and that Cablecom has not alleged facts sufficient to support such a contention. At oral argument, however, Cablecom disclaimed any intention to assert an undisclosed principal theory, mooting this argument.

At the same time, the fact that Cablecom appears to have gotten its act together by complying with corporate formalities regarding its ability to transact business in Virginia, its ability to do business under a fictitious name in Texas and Virginia and the continued viability of its corporate charter does not end the inquiry.[2] The salient fact remains that this case is a breach of contract action brought by Cablecom founded upon written instruments to which it is not a party. Thus, the court must inquire as to the sufficiency of the allegations suggesting a linkage between Cablecom and Property Tax Accounting. The only allegation in the first amended complaint of such linkage comes in the first line of the pleading and is subsumed in the shorthand reference "d/b/a." Under the circumstances of this case, such a shorthand allegation is woefully inadequate.

---

[2] It is worth noting that the court has chosen the words "appears to" with care. At best, Cablecom's handling of its corporate formalities is sloppy. Indeed, it is not at all clear that Cablecom has gotten it right even now. All of the corporate filings, in Texas and Virginia, refer to "Cablecom Tax Service, Inc." However, the complaint and first amended complaint bear a slightly different name, "Cablecom Tax Services, Inc." It is not known whether the difference in the two names reflected in the additional "s" in the style of the lawsuit represents a typographical error or a deeper infirmity.

Here, other than the shorthand "d/b/a," the first amended complaint is completely devoid of any allegation of any linkage between Cablecom and Property Tax Accounting and any allegation as to whether, in fact, and to what extent Cablecom actually did business as Property Tax Accounting. Simply asserting that Cablecom did business as Property Tax Accounting, given Cablecom's sketchy history of compliance with Texas law, is plainly insufficient.[3] Cablecom must plead facts sufficient to assert a plausible claim that it indeed did business as or was otherwise linked to Property Tax Accounting. At present, the allegations are simply too thin to state any plausible claim by Cablecom. As such, Shentel's motion to dismiss the breach of contract claim must be granted without prejudice.[4]

---

[3] Certain facts alleged in Shentel's first amended counterclaim highlight this concern.

> 13. John A. White was a Texas Certified Public Accountant. His license was revoked on April 30, 2006. Mr. White has offered his accounting services through multiple corporate entities, including John A. White, Inc., Property Tax Accounting Services, Inc., Property Tax Accounting, Inc., and now Cablecom, which claims to use the fictitious name Property Tax Accounting ("PTA").
>
> 14. In March of 1991, John A. White formed and incorporated "Property Tax Accounting Service, Incorporated", in the State of Texas. On February 19, 1997, the Texas Secretary of State entered an order determining that Property Tax Accounting Services, Incorporated had forfeited its charter and its corporate privileges.
>
> 15. In March, 1992, "Property Tax Accounting Service, Incorporated" a Texas corporation, was registered with the Indiana Secretary of State as a foreign corporation. In December 1995, "Property Tax Accounting, Inc." was incorporated in the State of Indiana, listing its registered agent's address at the same Indianapolis, Indiana address listed by Property Tax Accounting Service, Incorporated in its March 1992 filing with the State of Indiana. On January 21, 2004, Property Tax Accounting, Inc. filed Articles of Dissolution with the Indiana Secretary of State.
>
> 16. On June 11, 2001, Cablecom was incorporated in Texas. In filings with the Texas Secretary of State, Michele Dawn Kruger is listed as the President and sole director of Cablecom. Shentel is informed and therefore believes that Ms. Kruger is John A. White's daughter.
>
> 20. At all times relevant, Michel Dawn Kruger and John A. White represented themselves to Shentel as the sole employees, agents, and representatives of PTA.

First Amended Counterclaim, Dkt # 42, at ¶¶ 13-16, 20 (citations omitted).

[4] Cablecom asserts claims of implied contract, both in fact and at law. Virginia law recognizes implied or quasi contracts under certain circumstances. See Hendrickson v. Meredith, 161 Va. 193, 200-01, 170 S.E. 602, 605 (1933). In this case, however, any such quasi or implied contract claim suffers from the same threshold pleading issues as the express contract claim.

**B.**

In two scant paragraphs of the first amended complaint, ¶¶ 6.01 and 6.02, Cablecom attempts to sketch out an alternative claim for what it terms "quantum merit." A claim of quantum meruit or unjust enrichment is an equitable claim based on the notion that "one person may not enrich himself unjustly at the expense of another." Rinehart v. Pirkey, 126 Va. 346, 351, 101 S.E. 353, 354 (1919). In the absence of an express or enforceable contract, the law nevertheless will imply a promise to pay if the circumstances establish unjust enrichment. Ellis & Myers Lumber Co. v. Hubbard, 123 Va. 481, 96 S.E. 754, 760 (1918). To recover on an unjust enrichment theory, the claimant must show: (1) he conferred a benefit on the other party; (2) the other party had knowledge that the claimant was conferring the benefit; and (3) the other party accepted the benefit under circumstances that render it inequitable for him to retain the benefit without paying for the value he received. See Nossen v. Hoy, 750 F. Supp. 740, 745 (E.D. Va. 1990).

Cablecom's allegations are insufficient to state a claim for unjust enrichment under Virginia law. The first amended complaint contains the bare allegation that Cablecom incurred $641,426.60 for services and materials provided to Shentel. There are no allegations as to the amount or type of services performed by Cablecom for Shentel's benefit or the nature of the materials provided. Nor is there any allegation that Shentel had knowledge that Cablecom was providing services and materials in this amount for the benefit of Shentel. There is no allegation that Shentel approved of or had knowledge of what Cablecom was doing for Shentel's benefit. To state a claim for unjust enrichment, Cablecom is required to plead facts showing that it actually conferred a benefit on Shentel, that Shentel had knowledge of and accepted the benefit, and that the circumstances demonstrate that it would be inequitable for Shentel not to pay.

Cablecom's sparse pleading does not come close to alleging sufficient facts from which the court could conclude that it is entitled to relief. Accordingly, the court grants Shentel's motion to dismiss Cablecom's unjust enrichment or quantum meruit claim.

## C.

Cablecom's allegation of misappropriation of trade secrets also fails to state a claim. Cablecom alleges that, over the course of the past thirty (30) years, it has represented cable and telecommunications companies throughout the United States and "has developed valuable relationships with taxing authorities, has developed an accounting system uniquely suited to the telecommunications industry that is generally accepted by the various taxing authorities, and has developed knowledge, formulas and processes for the compilation and use of information provided and to be provided by PTA's customers in reducing PTA's customer's ad valorem and sales tax liability." First Amended Complaint, Dkt. # 45, at ¶ 7.01.

To state a claim under the Virginia Uniform Trade Secrets Act, a plaintiff must allege sufficient facts to establish (1) that the information at issue is a trade secret, and (2) that the defendant misappropriated it. The act defines a "trade secret" as:

> information, including but not limited to, a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> 1. Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and
>
> 2. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Va. Code Ann. § 59.1-336.

Shentel argues that Cablecom's trade secret claim should be dismissed because the first amended complaint contains no factual allegations that would allow the court to draw a

9

reasonable inference that Cablecom's "valuable relationships with taxing authorities" and "accounting system" meets the definition of a trade secret. For several reasons, the court agrees. First, the court cannot fathom how Cablecom's alleged "valuable relationships" with taxing authorities could conceivably fall under the definition of a trade secret. Simply put, such a relationship is not information that derives independent economic value from not being generally known and which could be the subject of reasonable efforts to maintain secrecy. Second, there is no allegation in the first amended complaint that suggests that the "accounting system" allegedly developed by Cablecom is anything other than the application of property tax laws and regulations to the telecommunications industry. Obviously, property tax laws and regulations are not secret. "The crucial characteristic of a trade secret is secrecy rather than novelty." Dionne v. Southeast Foam Converting & Packaging, Inc., 240 Va. 297, 302, 397 S.E.2d 110, 113 (1990). In order to be protected as a trade secret, the information in question "must be secret, and must not be of public knowledge or of a general knowledge in the trade or business." Hoechst Diafoil Co. v. Nan Ya Plastics Corp., 174 F.3d 411, 418 (4th Cir. 1999) (quoting Kewanee Oil Co. v. Bicron Corp., 416 U.S. 470, 475 (1974)). At best, Cablecom alleges that it took Shentel's financial information and recategorized it "to more accurately reflect true values, maximizing exemptions and by negotiating directly with the tax authorities to obtain compromises." First Amended Complaint, Dkt. # 45, at ¶ 7.01. Plainly, application of tax laws and regulations to a customer's financial information and negotiating property tax discounts with tax officials does not constitute a trade secret. The property tax laws and regulations and identities of local tax officials are not secrets and are reasonably ascertainable by proper means. The application of tax laws and regulations to Shentel's business may indeed involve accounting expertise and knowledge, and the negotiation of lower tax rates may indeed require some familiarity and

contacts with local tax authorities. Nonetheless, the possession of knowledge about tax laws and regulations applicable to a telecommunications company and negotiation of lower tax rates for that company comes nowhere close to meeting the statutory requirements for a trade secret. See McKay Consulting, Inc. v. Rockingham Mem. Hosp., 665 F. Supp. 2d 626, 633-35 (W.D. Va. 2009) (holding that a consultant's idea to increase government reimbursement rates for rural hospitals, founded, as it was, on statutes and regulations and other readily ascertainable publicly available information, was not a trade secret.). Indeed, the contracts forming the basis of the alleged relationship between Cablecom and Shentel merely indicate that Cablecom will "prepare current or amended property tax returns and to negotiate values with tax authorities." First Amended Complaint, Dkt. # 45, Ex. 1. Preparing tax returns and negotiating with tax authorities does not meet the statutory definition of a trade secret under Virginia law. Property tax statutes and regulations are not secrets. The identity of tax officials is not a secret. Shentel's financial information is not a secret to Shentel. If indeed there is some secret method or process at issue here, it certainly has not been sufficiently pled. Accordingly, Cablecom's implausible trade secret claim will be dismissed.

**II.**

Finally, Cablecom seeks a more definite statement concerning Shentel's fraud counterclaim. A motion for more definite statement is appropriate where a pleading "is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Rule 9(b) also requires that fraud allegations be made with particularity. The court has examined the allegations of the counterclaim as to both the fraud in the inducement and breach of contract counts and finds them to be sufficiently particular and adequate. Indeed, the counterclaim specifically alleges the time and place of the alleged fraud and details with sufficient clarity the

alleged misrepresentations.  The court's review of the counterclaim compels the conclusion that a more definite statement is not required and that Cablecom's request be denied.

### III.

For the reasons stated above, Shentel's Motion to Dismiss, Dkt. # 47, is **GRANTED**. Cablecom will be permitted to file a second amended complaint within fourteen (14) days, if it is able to do so within the constraints of Fed. R. Civ. P. 11.  Cablecom's Motion for More Definite Statement, Dkt. # 44, is **DENIED**.

An appropriate order will be entered this day.

Entered: May 30, 2013

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge